**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---:|
| CHAMBERS OF<br>CHARLES D. AUSTIN<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7810<br>MDD_CDAChambers@mdd.uscourts.gov |

March 31, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:  *Logan M. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
    Civil No. 24-0880-CDA

Dear Counsel:

On March 26, 2024, Plaintiff Logan M. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; D. Md. Loc. R. 301. I have considered the record in this case (ECF 8) and the parties' filings (ECFs 11, 13-14). I find that no hearing is necessary. *See* D. Md. Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, this Court will GRANT Plaintiff's motion for remand, REVERSE the SSA's decision, and REMAND the case to the SSA for further consideration. This letter explains why.

### I.  PROCEDURAL BACKGROUND

On May 13, 2021, Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of October 31, 2019. Tr. 141-46. Plaintiff's claim was denied initially and on reconsideration. Tr. 65-69, 71-73. On February 17, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 30-49. Following the hearing, on July 11, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 14-29. On February 12, 2024, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on March 26, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Logan M. v. Dudek*
Civil No. 24-0880-CDA
March 31, 2025
Page 2

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since May 13, 2021, the application date[.]" Tr. 19. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depression; anxiety; attention deficit hyperactivity disorder; autism spectrum disorder/Asperger's disorder[.]" Tr. 19.

At step three, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels and he can perform work that requires no more than occasional interaction with the public, occasional interaction with supervisors, and occasional interaction with coworkers. He can perform work that involves no more than occasional changes in work situations in a routine work setting.

Tr. 21. The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 24-25. Therefore, the ALJ concluded that Plaintiff has not been disabled "since May 13, 2021, the date the application was filed[.]" Tr. 26.

## III.     LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, this Court's review is limited to whether the ALJ

*Logan M. v. Dudek*
Civil No. 24-0880-CDA
March 31, 2025
Page 3

analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff alleges that the RFC is not supported by substantial evidence because the ALJ "cherry-picked" evidence in the record to discount his subjective complaints regarding his autism and Asperger's syndrome. ECF 11, at 9-13. Defendant counters that the RFC is supported by substantial evidence because the ALJ properly discounted Plaintiff's subjective complaints, and the RFC adequately accounts for Plaintiff's limitations. ECF 13, at 7-14.

The Court finds that the ALJ failed to properly analyze Plaintiff's subjective complaints regarding his autism and Asperger's syndrome. When evaluating a claimant's subjective complaints, ALJs use the two-step analytical framework set forth at 20 C.F.R. § 404.1529 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). At the first step of the process, the ALJ determines whether a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[3] *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 95). If such an impairment exists, the ALJ must "proceed to step two . . . even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence."[4] SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

At the second step, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Ibid.* Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at the second step. *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Ibid.* (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the

---

[3] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[4] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (citing *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)) (italics in original). In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" 2017 WL 5180304, at *5. Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.* To do so, an ALJ considers "all of the evidence" in a claimant's record. *Id.* at *2, *7.

Plaintiff's argument warrants a broader discussion about an ALJ's evaluation of a claimant's subjective complaints regarding autism and Asperger's syndrome. Autism spectrum disorder is "a complex and severe set of developmental disorders characterized by sustained impairments in social interaction, impairments in verbal communication, and stereotypically restricted or repetitive patterns of behaviors and interests." *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 474 n.14 (M.D.N.C. 2006) (internal quotation marks and citation omitted). "[S]igns of autism include deficits in social communication and interaction[.]" *Buehner v. Kijakazi*, No. 22-045-PPS, 2022 WL 17076652, at *5 (N.D. Ind. Nov. 18, 2022). Asperger's syndrome is a type of autism spectrum disorder. *Mr. I. v. Maine Sch. Admin. Dist. 55*, 416 F. Supp. 2d 147, 153 (D. Me. 2006). Asperger's syndrome is a pervasive developmental disorder characterized by "severe and sustained impairment in social interaction" and "significant impairment of social, occupational, or other important areas of functioning." *Ward v. Colvin*, No. 12-3654-RMG, 2014 WL 545894, at *3 n.1 (D.S.C. Feb. 10, 2014). In other words, it "affects a person's ability to socialize and communicate effectively with others." *Falls v. Colvin*, No. 13-4169-REL, 2014 WL 3828457, at *1 n.1 (W.D. Mo. Aug. 4, 2012). Due to autism's and Asperger's syndrome's impact on social interaction and communication, a claimant's subjective complaints regarding autism or Asperger's syndrome merit special consideration because "[a]ny job, at its core, requires some minimal ability to adjust, focus, and socialize." *Keen v. Comm'r of Soc. Sec.*, No. 22-145-MAP, 2023 WL 2706732, at *10 (M.D. Fla. Mar. 30, 2023).

Where autism or Asperger's syndrome is found to be a severe impairment, courts pay close attention to whether the ALJ "cherry-picked" evidence in deciding what weight to give a claimant's subjective complaints. *See Keen*, 2023 WL 2706732, at *9-10 (observing that the ALJ failed to consider "other test results that reveal [that the claimant's] adaptive abilities, focus, and socialization reflect significant deficiencies"); *Buehner*, 2022 WL 17076652, at *3-6 (observing that the ALJ "impermissibly cherry-pick[ed] evidence to support her decision" that the claimant's "social deficits are less limiting than he alleges"); *Vargas v. Kijakazi*, No. 22-0555-HBK, 2023 WL 6308399, at *4-5 (E.D. Cal. Sept. 28, 2023) (observing that the ALJ failed to consider other evidence supporting the claimant's subjective complaints regarding his "need for reminders, difficulty following instructions, extra time to complete tasks, or difficulties handling stress"); *Cole B. v. Comm'r Soc. Sec. Admin.*, No. 19-1619-MK, 2020 WL 6710570, at *4 (D. Or. Nov. 16, 2020) (observing that a "handful of instances show[ing] that [the p]laintiff was occasionally able

to be on time and focus" did not justify the ALJ's rejection of the plaintiff's testimony "that he [] experienced difficulties with focusing and showing up on time"); *Torres v. Saul*, No. 19-645-RBF, 2020 WL 4919563, at *3 (W.D. Tex. Aug. 20, 2020) (observing that the ALJ failed to consider "the extensive psychosocial support provided by [the claimant]'s family, school, and other caregivers")

In *Buehner*, the court ordered remand because the ALJ "cherry-picked" evidence. 2022 WL 17076652, at *6. The claimant's testimony and record reflected his "substantial limitations with social interactions." *Id.* at *5. However, the ALJ discounted the claimant's testimony with evidence in the record that the claimant attended class, received good grades, and cooperated with a consultative examiner on one occasion. The court found that the ALJ's reliance on class attendance and academic performance did "not speak to [the claimant's] ability to interact socially with others or his ability to complete tasks on his own" because autism is defined by "deficits in social communication and interaction, . . . not [] intellectual disability." *Id.* Moreover, the court found that the ALJ's reliance on the claimant's cooperation "with an examiner on one occasion [did not] disprove[] a record . . . replete with references to [the claimant] having substantial limitations with social interactions." *Id.*

In *Vargas*, the court also ordered remand because the ALJ "cherry-picked" evidence. 2023 WL 6308399, at *5. The claimant testified that he "require[d] frequent reminders for personal care and to take medication, ha[d] a hard time keeping his schedule, ha[d] difficulty concentrating, d[id] not leave the house alone, [could not] follow instructions, d[id] not handle stress well, ha[d] difficulty completing tasks, and d[id] not handle changes in routine well[.]" *Id.* at *4. However, the ALJ discounted the claimant's testimony with evidence in the record that the claimant attended 98% of his classes, a teacher reported improvement, and a mental examination that noted adequate abstraction and concentration. *Id.* at *4-5. The court found that this evidence did nothing to "undermine [the claimant]'s reported symptom claims regarding needing reminders, task completion, difficulty following instructions, and difficulty handling stress and changes in routine." *Id.* at *5. Moreover, the court observed that the ALJ failed to "acknowledge accommodations [the claimant] received in high school, including: getting copies of notes from teachers, assigned 'notetakers' for classes, seating away from distractions, clarification of instructions, instructions in written form and check for understanding, extended time for assignments, providing reminders, and taking tests in separate rooms." *Id.*

Likewise, the court in *Keen* ordered remand because the ALJ "cherry-picked" evidence. 2023 WL 2706732, at *10. The claimant's testimony and record "overwhelming[ly]" showed that, due to his autism, the claimant "need[ed] reminders, cues, and assistance to deal with many of the necessities of life[,]" including cooking, driving, paying bills, and being hygienic. *Id.* However, the ALJ discounted the claimant's testimony with evidence in the record that the claimant acted pleasantly and appeared well-groomed at examinations. *Id.* Yet, the record contained other evidence "that reveal[ed that the claimant's] adaptive abilities, focus, and socialization reflect significant deficiencies." *Id.* The court found that, "while he may have performed at acceptable levels on some tests[,]" substantial evidence did not support a finding that the claimant could perform the prescribed RFC because the fact that the claimant "functioned in a sheltered

environment . . . with coaching and patience and accommodation" did not mean that he could "maintain concentration or appropriate social interactions throughout the workday[.]" *Id.*

The courts in *Darrell H.* and *Torres* remanded for the reason articulated in *Keen*. ALJs must consider "evidence showing that [a claimant] generally functioned in a more-supervised, structured environment where he received specific supports to help him sustain an ordinary routine at home and at school." *Darrell H. v. Kijakazi*, No. 22-0002, 2022 WL 17960460, at *8 (W.D. Va. Dec. 27, 2022). By failing to consider such evidence, "the ALJ act[s] on an incomplete picture of [the claimant]'s work-related abilities." *Torres*, 2020 WL 4919563, at *4. "This is because a claimant's 'ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [his] ability to complete tasks in the context of regular employment during a normal workday or work week.'" *Id.* (quoting SSA POMS DI § 34001.032(C)(6)(b)). Failure to consider such evidence warrants remand. *See, e.g., Darrell H.*, 2022 WL 17960460, at *8; *Torres*, 2020 WL 4919563, at *4.

At the first step, the ALJ here concluded that Plaintiff's severe impairments "could reasonably be expected to cause the alleged symptoms." Tr. 22. At the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* The ALJ cited the following reasons for this conclusion:

(1) Treatment records generally showed that Plaintiff was "polite";

(2) At a mental status consultative examination, Plaintiff "was fully oriented[,] cooperate with normal motor behavior and appropriate eye contact[, and] had fluent speech[,] clear quality of voice[,] adequate receptive language[,] coherent and goal directed thought processes[,] . . . full range and appropriate of effect, clear sensorium, average intellectual functioning, fair insight, and fair judgment";

(3) Plaintiff obtained a "Full Scale IQ of 94" on a Wechsler Adult Intelligence Scale;

(4) Plaintiff did not take any medication nor receive treatment;

(5) Plaintiff graduated high school, was "polite, friendly, and cooperative[,]" had "a number of interests[,] . . . enjoy[ed] learning about science, discussing current events and world history[,]" was "willing to share what he kn[ew] and . . . learn[ed]" in a group setting, and was "in the regular classroom [98%] of the school day"; and

(6) Plaintiff lived with his parents and sister, cared for his pets, played video games, watched YouTube videos, cleaned up after himself, counted change, and spent time with others in person and by video chat.

Tr. 22-23. However, the ALJ failed to consider "all of the evidence" in Plaintiff's record. SSR

*Logan M. v. Dudek*
Civil No. 24-0880-CDA
March 31, 2025
Page 7

16-3p, 2017 WL 5180304, at *2, *7. Specifically, like in *Buehner*, *Vargas*, and *Keen*, the ALJ "cherry-picked" evidence in deciding what weight to give Plaintiff's subjective complaints regarding autism and Asperger's syndrome.

As an initial matter, reasons (1), (2), (3), and (5) do not undermine Plaintiff's subjective testimony that:

> he is unable to work because he has trouble handling social situations, talking to people, concentrating, and staying focused; social situations cause stress, which require a lengthy period to destress; sensory issues disrupt his hygiene and changing clothes; and he has trouble with his fine motor skills. He claims he has difficulty talking, completing tasks, using his hands, and getting along with others. [Plaintiff] alleges he needs instructions repeated; never had a job; does not handle stress or changes in routine well; has never worked because of his anxiety and learning disorder; and does nothing all day. He contends he has anxiety being around people in general; has not left his house since May 2022 because he does not want to go out anywhere; he never tried to learn anything; and does not get treatment for anxiety because he does not think treatment would help him.

Tr. 21-22. Similar to *Buehner*, *Vargas*, *Keen*, and *Cole B.*, neither a handful of occasions where examiners observed Plaintiff as polite or well-groomed nor class attendance speak to Plaintiff's ability to handle social situations, communicate with others, or complete tasks. *See also Forrest B. v. Berryhill*, No. 17-1655-YY, 2019 WL 2488726, at *4-5 (D. Or. Feb. 27, 2019) (observing that one medical appointment where the claimant presented as "polite" did not discount his testimony regarding social limitations). Moreover, like in *Vargas*, despite relying on educational records to discount his testimony, the ALJ failed to discuss the accommodations Plaintiff received at his school. Plaintiff received the following accommodations:

> Refer to [Positive Behavior Support Plan] when necessary, (2) 3-minute breaks per class session; [Plaintiff] must notify teacher prior to stepping away from class, Social Skills class, Prompting to stay on task, Career Forward 11 reduced assignments, Use of a calculator, [Plaintiff] not required to speak on the microphone during live class sessions, [Plaintiff] will complete only odd numbered assessment items on tests and quizzes 20 points or more, Reduction of writing assignments with a requirement of 10 or more sentences, Complete only one Applied Knowledge Assessment (AKA) per course; exempt from all others, [Plaintiff] option to retake all classroom assessment if student scores below 60%, within two weeks of original attempt- one retake only, and Assistive Technology-Screen Reader.

Tr. 351. Yet, nowhere in the ALJ's decision is there a reference to these accommodations.

Reason (6) does not undermine Plaintiff's subjective testimony either. The ALJ placed too much emphasis on Plaintiff's ability to play video games and watch YouTube videos without explaining why the video game playing and YouTube watching suggested Plaintiff's ability to

*Logan M. v. Dudek*
Civil No. 24-0880-CDA
March 31, 2025
Page 8

work. *See Dylan B. v. Kijakazi*, No. 21-5556, 2023 WL 22160, at *3 (N.D. Ill. Jan. 3, 2023) (rejecting an ALJ's attempt to discount the claimant's testimony regarding mental deficits due to an ability to play video games or play on a computer); *see also James v. Berryhill*, No. 17-3037, 2018 WL 3438912, at *3 (N.D. Ill. July 17, 2018) (recognizing that "the ability to play video games and watch television [does not] signal[] the ability to do full-time work"). Furthermore, in a case like this involving autism and Asperger's, the ability to live with parents, care for pets, or count change does not necessarily support the notion that Plaintiff is capable of maintaining appropriate social interactions through a workday. *See Eiker v. Astrue*, No. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013) ("When assessing the effect of [a] claimant['s] activities of daily living . . ., ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy.").

Importantly, the ALJ failed to consider a record replete with references to Plaintiff having substantial limitations with social interactions. In the treatment records the ALJ used to discount Plaintiff's subjective complaints, Plaintiff's treating physician observed that Plaintiff had Asperger's syndrome, felt "uncomfortable around other people[,] . . . struggle[d] with functioning at a level required by work [o]n a regular basis[,] . . . [made] very poor eye contact[,]" and was quiet, restricted, and "very" socially awkward. Tr. 318-19. Moreover, in the same educational records the ALJ used to discount his subjective complaints, Plaintiff's school observed that Plaintiff had autism and needed to improve his on-task behavior, social skills, and active participation. Tr. 351, 356. The school further noted that Plaintiff often entered the classroom, put his head down on the desk, and ignored people who tried to interact with him, avoided greetings from other students and staff, refused to complete assignments, slept, became physically aggressive, and used inappropriate language. Tr. 356, 360. The school also kept a list of instructions on how to work with Plaintiff. *See* Tr. 382-84. The list, among other things, includes not touching Plaintiff, praising Plaintiff for kind behavior and satisfactory performance, allowing Plaintiff to eat lunch in non-cafeteria locations and take breaks during class, providing Plaintiff with a warning prior to ending an activity, and reminding Plaintiff about his daily schedule and school protocol. *Id.*

In the same mental status consultative examination the ALJ used to discount his subjective complaints, Dr. Leah Bielski observed that Plaintiff experienced "dysphoric moods, . . . loss of interest in activities, worthlessness, diminished self-esteem, diminished sense of pleasure, [] social withdrawal[,] . . . excessive worry and apprehension, restlessness, [] avoidance of social settings[, and] . . . difficulties learning new material and organization and planning difficulties." Tr. 399. Dr. Bielski further observed that Plaintiff had "some difficulties with word finding" and "was poorly groomed[,] . . . mild[ly] distress[ed, and] . . . tense and anxious throughout the testing session." Tr. 400-01. Dr. Bielski also observed that Plaintiff did not cook, do laundry, grocery shop, drive, take public transportation, or manage his money. Tr. 402. Plaintiff and his mother confirmed this in their testimony. *See* Tr. 38-43, 184-91. Dr. Bielski opined that Plaintiff "typically does not socialize with others" and that his adaptive functioning in social community involvement and work is limited. *Id.*

*Logan M. v. Dudek*
Civil No. 24-0880-CDA
March 31, 2025
Page 9

At no point in the decision does the ALJ discuss any of this evidence. In fact, even more shocking is that, other than concluding that autism and Asperger's syndrome are severe impairments, the ALJ makes no reference to either autism or Asperger's syndrome in their opinion. This represents impermissible cherry-picking and warrants remand. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (internal quotation marks and citation omitted)). Reason (4) does not, on its own, justify the ALJ's decision to discount Plaintiff's subjective complaints. Moreover, like in *Darrell H.* and *Torres*, the ALJ's failure to consider evidence that Plaintiff functioned in a more-supervised, structured environment warrants remand.

Because the case is being remanded on this basis, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and adjust their opinion accordingly. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion regarding Plaintiff's entitlement to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for remand, ECF 11, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge